UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBRA H.,

                      Plaintiff,

           v.

KILOLO KIJAKAZI,[1] Commissioner of
  Social Security,

                      Defendant.
_____

**DECISION
and
ORDER**

**21-CV-6185F**
(**consent**)

APPEARANCES:         LACHMAN & GORTON
                            Attorneys for Plaintiff
                            PETER A. GORTON, of Counsel
                            1500 East Main Street
                            P.O. Box 89
                            Endicott, New York  13760

                            TRINI E. ROSS
                            UNITED STATES ATTORNEY
                            Attorney for Defendant
                            Federal Centre
                            138 Delaware Avenue
                            Buffalo, New York  14202
                                  and
                            KATHRYN L. SMITH
                            ASSISTANT UNITED STATES ATTORNEY, of Counsel
                            U.S. Attorney's Office – Rochester
                            100 State Street
                            Rochester, New York  14614
                                  and
                            MICHAEL P. CORONA
                            Special Assistant United States Attorney, of Counsel
                            Social Security Administration
                            Office of General Counsel
                            6401 Security Boulevard
                            Baltimore, Maryland  21235

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On October 3, 2022, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order (Dkt. 17).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on October 18, 2021 (Dkt. 14), and by Defendant on December 14, 2021 (Dkt. 15).

## BACKGROUND

Plaintiff Debra H. ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications ("applications") filed with the Social Security Administration ("SSA") on May 16, 2019, for Social Security Disability Income under Title II of the Act ("SSDI"), and for Supplemental Security Income under Title XVI of the Act ("SSI") (together, "disability benefits").  Plaintiff alleges she became disabled on December 31, 2013, based on depression, post-traumatic stress disorder ("PTSD"), panic attacks, anxiety, kidney disease stage 3, Type II diabetes, kidney stones, frozen left shoulder, left knee pain, left chondromalacia patella (breakdown of cartilage on the underside of the kneecap), irritable bowel syndrome ("IBS"), diverticulosis, non-morbid obesity, high cholesterol, gastroesophageal reflux disease ("GERD"), high blood pressure ("HBD"), and hyperglycemia (high blood sugar).  AR[2] at 12, 323, 369, 374.  Plaintiff's applications

---

[2] References to "AR" are to the pages of the Administrative Record electronically filed by Defendant on August 19, 2021 (Dkt. 13).

initially were denied on September 10, 2019, AR at 218-28, and upon reconsideration on February 18, 2020.  AR at 231-46.

On February 28, 2020, Plaintiff timely filed a request for an administrative hearing, AR at 247-48, and on June 22, 2020, a hearing was held in Horseheads, New York, via telephone conference before Administrative Law Judge ("ALJ") Elizabeth W. Koennecke ("the ALJ"), located in Rochester, New York ("first hearing").  AR at 84-108. Appearing by telephone were Plaintiff, represented by legal counsel Dorollo Nixon, Esq. ("Nixon").  At the first hearing, additional exhibits were entered into the record without objection, AR at 87, the ALJ stated the record would be held open for 30 days in anticipation of additional exhibits which Nixon did not provide prior to the first hearing, *id*., and Plaintiff's alleged disability onset date ("DOD") was amended to September 1, 2018.  *Id*. at 87-88.

Upon receiving additional orthopedic records associated with Plaintiff's reconsideration determination not previously made part of the record, the ALJ scheduled a supplemental administrative hearing ("second hearing") to obtain testimony from a vocational expert ("VE").  AR at 74-83.  On October 5, 2020, the second hearing was held before the ALJ in Syracuse, New York.  Appearing in person at the second hearing were Plaintiff, represented by Peter Gorton, Esq., and VE James Soldner, Ph.D.

On October 22, 2020, the ALJ issued a decision denying Plaintiff's claim, AR at 9-34 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council.  AR at 320-22.  On January 5, 2021, the Appeals Council adopted the ALJ's Decision that Plaintiff was not disabled, AR at 1-6 ("Appeals Council's Decision"), thus rendering the ALJ's Decision the Commissioner's final decision.  The Appeals Council's Decision

acknowledges the receipt of "Physical therapy records and lab work dated July 3, 2020 through September 4, 2020," but that such evidence was not made part of the formal administrative records because it did not show a reasonable probability of changing the outcome of the ALJ's Decision.  AR at 2.  On February 24, 2021, Plaintiff commenced the instant action seeking review of the ALJ's Decision denying Plaintiff disability benefits.

On October 18, 2021, Plaintiff moved for judgment on the pleadings (Dkt. 14 ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of the Plaintiff's Motion for Judgment on the Pleadings (Dkt. 14-1) ("Plaintiff's Memorandum").  On December 14, 2021, Defendant moved for judgment on the pleadings (Dkt. 15) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of Her Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule 5.5 (Dkt. 15-1) ("Defendant's Memorandum").  Filed on December 16, 2021, was Plaintiff's Reply Brief (Dkt. 16) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.


## FACTS[3]

Plaintiff Debra H. ("Plaintiff"), born June 29, 1966, was 52 years old as of her amended alleged DOD of September 1, 2018, and 54 years old as of October 27, 2020, the date of the ALJ's Decision.  AR at 12, 28, 369.

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

Plaintiff is divorced and has two children including an adult daughter and a teenage son. AR at 387. Plaintiff lives in a house and her son lives part-time with Plaintiff. AR at 387, 763. Plaintiff graduated high school where she was in regular classes, and has not completed any specialized training, trade, or vocational school. AR at 375, 763. Plaintiff has a driver's license, but does not drive because she does not have a vehicle, and walks short distances or depends on other for rides and sometimes take a medical cab for medical appointments. AR at 390. Plaintiff's past relevant work ("PRW") includes working in retail as a cashier, sales associate, pharmacy technician, human resources manager, and bakery worker, at a nursing home as a residential aide, at a manufacturing facility as a line worker, and in a restaurant preparing food. AR at 399. Plaintiff most recently was employed in 2016 as a cake decorator but left the job after one week because of anxiety. AR at 763.

It is undisputed Plaintiff suffers from multiple physical and mental health impairments. Plaintiff's physical impairments include diabetes, diabetic neuropathy, obesity, left shoulder impairment, left knee impairment, and degenerative disc disease of the lumbar spine, HBD, and Plaintiff's mental health impairments include depression, anxiety and PTSD. AR at 15. Plaintiff has suffered from anxiety since her 20s, and reports her anxiety greatly increased when her father committed suicide and she was raped around the same time.[4] AR at 396.

Between February 19, 2015 to August 7, 2017, Plaintiff was treated for her mental health impairments at Cerio Counseling Services, where Plaintiff saw

---

[4] Because Plaintiff's arguments in support of judgment on the pleadings focus largely on her mental health impairments, Plaintiff's Memorandum at 1-2, the discussion of the administrative record also focuses on those records relevant to her mental health impairments.

psychologist Carl J. Kittleson, Psy.D. ("Dr. Kittleson").  AR at 505-552.  On October 19,

2017, Plaintiff commenced mental health counseling at Adult Mental Health Services

("AMHS") in Elmira, New York, where Plaintiff saw psychiatrist John H. Deines, M.D.

("Dr. Deines"), and counselor Licensed Master Social Worker ("LMSW") Rachel Jividen

("Counselor Jividen").  AR at 623-755, 904, 952-1006, 1050-69, 1085-1108.  On June

12, 2019, Dr. Deines and Counselor Jividen, together, completed a Psychiatric

Functional Assessment regarding their treatment of Plaintiff's mental health impairments

since October 3, 2017.  AR at 624-29.  Plaintiff' obtained primary care at Arnot Health

where she was treated by Mark D. Gibson, M.D. ("Dr. Gibson"), Carl M. Charnetski,

M.D. ("Dr. Charnetski"), nurse practitioner Lou A. DiPetta ("NP DiPetta"), and physician

assistant Erica Angelino ("PA Angelino").  AR at 1007-48.

     In connection with her disability benefits applications, on May 2, 2019, Plaintiff

underwent a consultative internal medicine examination by Justine Magurno, M.D. ("Dr.

Magurno").  AR at 756-61.  On August 21, 2019, Plaintiff underwent a consultative

psychiatric examination by psychologist Andrew Cole, Psy.D. ("Dr. Cole").  AR at 763-

67.  On January 29, 2020, Plaintiff underwent a second consultative internal medicine

examination by Gilbert Jenouri, M.D. ("Dr. Jenouri").  AR at 769-73.

     Plaintiff's medical records were reviewed on August 27, 2019, by non-examining

State agency medical consultant M. Angelotti, M.D. ("Dr. Angelotti"), AR at 146-49, and

on August 29, 2019, by non-examining State agency psychologist T. Bruni, Ph.D. ("Dr.

Bruni").  AR at 149-52.  Plaintiff's medical records were further reviewed on February 5,

2020, by non-examining State agency psychologist O. Fassler, Ph.D. ("Dr. Fassler"), AR

at 190-93, and on February 10, 2020, by non-examining State agency medical

consultant T. Schmidt-Deyoung, M.D. ("Dr. Schmidt-Deyoung").  AR at 187-90.


## DISCUSSION

1.     **Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability

benefits when she is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§

416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's

determination that a claimant is not disabled if the factual findings are not supported by

substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g),

1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In

reviewing a final decision of the SSA, a district court "is limited to determining whether

the SSA's conclusions were supported by substantial evidence in the record and were

based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012) (internal quotation marks and citation omitted).  "Substantial evidence is more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's

function to make a *de novo* determination as to whether the claimant is disabled; rather,

"the reviewing court is required to examine the entire record, including contradictory

evidence and evidence from which conflicting inferences can be drawn" to determine

whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has

instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2.      Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if

the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

**3.      Analysis of Plaintiff's Arguments**

In the instant case, the ALJ found Plaintiff meets the insured status requirements for SSDI though June 30, 2019, AR at 15, and has not engaged in substantial gainful activity ("SGA") since September 1, 2018.  *Id*.  The ALJ found Plaintiff suffers from the severe impairments of diabetic neuropathy, obesity, a left shoulder impingement, left knee impairment, degenerative disc disease of the lumbar spine, and mental diagnoses, variously characterized as depression, anxiety, and PTSD, *id*. at 15, but that Plaintiff's other impairments, including hypertension, kidney disease, kidney stones, IBS, diverticulitis, GERD, asthma, plantar fasciitis, and right knee pain, do not pose more than a slight limitation on Plaintiff's ability to perform basic work activities and, thus, are not severe, *id*. at 15-16, and that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*. at 16-19.  Despite her impairments, the ALJ found Plaintiff retains the RFC to perform light work limited to occasionally pushing and/or pulling, climbing, stooping, and crawling, reaching overhead on her non-dominant left side, but no other reaching limitations, retains the ability to understand and follow simple instructions and directions, perform simple tasks independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, handle simple, repetitive, work-related stress in that she can make occasional decisions directly related to the performance of simple tasks, in a position consistent with job duties, that do not require Plaintiff to supervise or manage the work of others,

should avoid work requiring more complex interaction or joint effort to achieve work goals, and can have no contact with the public.  AR at 19-25.  The ALJ further found Plaintiff is incapable of performing her PRW, *id*. at 25-26, but that based on Plaintiff's age on the amended alleged DOD of 52, which is defined as an individual closely approaching advanced age, and given Plaintiff's RFC, education, and ability to communicate in English, with transferability of skills irrelevant to the disability determination, there are jobs existing in significant numbers in the national economy that Plaintiff is capable of performing including as an office helper, housekeeping cleaner, and laundry sorter.  *Id*. at 26-27.  Accordingly, the ALJ found Plaintiff was not disabled as defined in the Act through the date of the ALJ's Decision.  *Id*. at 27-28.

In support of her motion, Plaintiff argues that the psychiatric RFC is not supported by substantial evidence in the record, Plaintiff's Memorandum at 9-16, the ALJ improperly assessed the opinions of Dr. Deines and Counselor Jividen, *id*. at 16-23, and the ALJ erred by failing to include a bending limitation in formulating Plaintiff's RFC. *Id*. at 23-24.  In opposition, Defendant argues that Plaintiff seeks an impermissible reweighing of the evidence and that the ALJ, in assessing Plaintiff's mental RFC, properly evaluated all administrative medical findings and opinions, and formulated an RFC supported by the record as a whole, Defendants' Memorandum at 17-29, and that the ALJ's failure to include any bending limitation in the RFC is supported by the record. *Id*. at 29-30.  In reply, Plaintiff maintains Defendant disingenuously cites to portions of the administrative record referenced by the ALJ which support the ALJ's conclusions, but ignores significant findings to the contrary.  Plaintiff's Reply, *passim*.   Plaintiff's argument on this point is without merit.

11

With regard to Plaintiff's mental RFC, Plaintiff argues the ALJ improperly relies on the opinion of non-examining state agency psychologists Drs. Bruni and Fassler, finding such opinions persuasive, without providing the substantive explanation as to the supportability and consistency factors required by the regulations, particularly, 20 C.F.R. §§ 404.1520c and 416.920c.[6]  Plaintiff's Memorandum at 9-16.  These new regulations apply to Plaintiff's claim and provide that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  When a medical source provides one or more medical opinions, the Commissioner will consider the medical opinions from that source together according to five factors including (1) supportability; (2) consistency; (3) the medical's source's relationship with the claimant; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  Relevantly, when evaluating the persuasiveness of a medical opinion, the two most important factors are supportability and consistency, 20 C.F.R. §§ 404.1520c(a), 419.920c(a), and the ALJ must articulate he or she considered the "supportability" and "consistency" of a medical source's opinion, 20 C.F.R. §§

_____

[6] For claims filed prior to March 27, 2017, the opinions of a claimant's treating physicians were to be given "controlling weight" provided such opinions were "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [were] not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  New regulations regarding the evaluation of medical evidence took effect on March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence. 82 Fed. Reg. 5844-01 (Jan. 18, 2017).  Because Plaintiff's application was filed on May 16, 2019, the previous regulations, including the treating physician rule, are inapplicable to Plaintiff's claim.

404.1520c(b)(2), 416.920c(b)(2), but is not required to articulate consideration of the remaining factors.  *Id*.

In the instant case, although, as Plaintiff argues, the ALJ failed to articulate the supportability and consistency factors with regard to the consultative opinions of both consultative State agency psychologists, *i.e.*, Dr. Bruni and Dr. Fassler, which the ALJ found persuasive, Plaintiff's Memorandum at 11-16, a plain reading of the record establishes such error was harmless.  *See Scott A. v. Comm'r of Soc. Sec.*, 2022 WL 3141707, at * 5-6 (N.D.N.Y. May 3, 2022) (applying harmless error standard announced in *Schall v. Apfel*, 134 F.3d 496, 504-05 (2d Cir. 1998) where the ALJ failed to articulate the supportability and consistency factors in assessing the persuasiveness of a physician's opinion where application of the correct legal standard would not have resulted in a different conclusion (comparing *Johnathan W. v. Saul*, 2021 WL 1163632, at * 7 (N.D.N.Y. Mar. 26, 2021) (finding ALJ's failure to articulate how persuasive was a physician's opinion, including failing to explain the supportability and consistency factors, was not harmless error because that opinion could have impacted the ALJ's analysis in a meaningful way))).

In particular, the ALJ explained that Dr. Bruni and Dr. Fassler were "generally consistent in their conclusions," which identified moderate limitations in Plaintiff's ability to interact with others, sustain a consistent pace over a typical workday or workweek, mild limitations in understanding, remembering and applying information, and no limitations with regard to adapting or managing oneself, AR at 24 (referencing AR at 144 (Dr. Bruni), 212 (Dr. Fassler).  The ALJ further explained that both Dr. Bruni and Dr. Fassler are mental health experts and knowledgeable about the disability determination

process, adding that although the ALJ "adopted somewhat greater limitations in social interaction" than those assessed by Drs. Bruni and Fassler, the consultative psychologists' assessments of Plaintiff's mental health impairment "are otherwise generally consistent with the record as a whole, and persuasive," AR at 24, and that determination is confirmed by a review of the evidence in the record.

Specifically, since October 19, 2017, Plaintiff's mental health treatment has been provided by Dr. Deines and LMSW Jividen, AR at 623-755, 904, 952-1006, 1050-69, 1085-1108, who, on June 12, 2019, jointly prepared a Psychiatric Functional Assessment.  As the ALJ found, Dr. Deines and Counselor Jividen, on June 12, 2019, generally assessed Plaintiff with none, mild or moderate limitations in 29 of 36 different aspects set forth in four separate categories of understanding, remembering, or applying information, interacting with others, concentrating, persistence or maintaining pace, and adapting or managing oneself, AR at 625-27, with the exception of "marked or serious" restrictions in using reason and judgment to make work-related decisions, responding appropriately to requests, suggestions, criticism, correction, and challenges from co-workers or supervisors, performing at a consistent pace without interruption from symptoms or an unreasonable number and length of breaks, managing psychologically based symptoms, and responding to demands, and an "extreme" restriction in cooperating and handling conflict with others.  A review of the record establishes the ALJ's determination that Plaintiff's marked and extreme mental limitations as reported by Dr. Deines and Counselor Jividen "are poorly supported by the evidentiary record," AR at 24, is correct.

In support of this finding, the ALJ references several exhibits in the administrative record, including AR at 667 and 1057 (Dr. Deines reporting Plaintiff's mental status as "well oriented in all spheres" in March 29, 2018 and July 2, 2020 Session Information), 952 (Dr. Deine's progress notes dated July 18, 2019, reporting Plaintiff's "depression and anxiety have decreased and she appeared much more calm and under better emotional control than during prior sessions," and that Plaintiff's current medication regime "continues to keep her depression and anxiety under fairly good control and she is more emotionally stable in general"); 965 (Dr. Deines reporting on September 23, 2019 that Plaintiff's "depression and anxiety continue to be under fairly good control"); 1018-19 (PA Angelino's progress note dated October 8, 2019, describing Plaintiff's general appearance as "alert, in no acute distress, normal, pleasant," oriented as to time, place, and person, with "normal" mood/affect); 971 (Dr. Deines Session Information dated November 7, 2019, stating that Plaintiff's "depression and anxiety continue to be under fairly good control"); 1052 (Counselor Jividen reporting on June 23, 2020 that Plaintiff "states she has been talking to her mother and her children. [Plaintiff] reports she is doing well otherwise."); 1054 (Dr. Deines Session Information dated July 2, 2020, reporting that Plaintiff "continues to think her psychiatric medications are working adequately for her without [side effects] although her depression and anxiety continue to be higher than usual due to the Coronavirus").  This court's review of all Session Information entries prepared by Dr. Deines and Counselor Jividen consistently show Plaintiff with depression and anxiety, but are devoid of any statements supporting the marked and extreme limitations included in the June 12, 2019 Psychiatric Function Assessment.

Moreover, other entries establish that depression and anxiety were not always Plaintiff's chief complaint.  *See*, *e.g.*, AR at 692 (Dr. Deines reporting on 7/25/2018 that plaintiff "continues to experience severe depression with frequent crying spells and significant anxiety but her main concern at this time is her poor sleep."); 747 (May 24, 2019 Session Information reporting Dr. Deines "tried to raise the possibility that [Plaintiff] may never be eligible for SSD and to start considering other options but [Plaintiff] is determined to continue trying to obtain SSD and in fact is meeting with her lawyer tomorrow to start a new application"); AR at 754 (Dr. Deines reporting on June 20, 2019, Plaintiff met with her attorney several times and is filing applications for both SSI and SSDI, but dealing with everything is very stressful which Dr. Deines "acknowledged and offered encouragement but she seemed to want me to focus[ ] on how dire her [financial] situation is"); AR at 1063-64 (Counselor Jividen reporting on July 28, 2020 that upon mental status examination Plaintiff was "well oriented in all spheres," and "thinks her psychiatric medications are working adequately for her without [side effects] so they will be continued the same.").  Accordingly, the ALJ did not err in failing to separately assess the supportability and consistency factors required by 20 C.F.R. §§ 404.1520c and 416.920c with regard to the opinions of Dr. Bruni and Dr. Fassler, nor did the ALJ improperly assess the opinion of Dr. Deines and Counselor Jividen.

With regard to Plaintiff's argument that the ALJ erred by failing to include in the RFC a bending limitation despite State agency consultative physician Dr. Schmidt-Deyoung stating Plaintiff can only "occasionally" stoop, *i.e.*, bend at the waist, AR at 188, and both examining consultative physicians Dr. Magurno and Dr. Jenouri, assessing Plaintiff with a "moderate restriction" to, *inter alia*, bending, AR at 760 (Dr.

Magurno), and 772 (Dr. Jenouri), plaintiff maintains the ALJ instead improperly relied only on the opinion of non-examining State agency consultative physician Dr. Angelotti who did not assess any bending limitations.  Plaintiff's Memorandum at 23-24.  In opposition, Defendant argues that in formulating Plaintiff's RFC, the ALJ relied on physical examination results that were normal, AR at 21 (referencing treatment notes from Arnot Health including AR at 1011, 1015, and 1026, describing Plaintiff's musculoskeletal as "normal muscle strength, full range of motion).  In reply, Plaintiff relies on her original argument.  Plaintiff's Reply at 4.

Although the ALJ did not separately include a bending restriction in Plaintiff's RFC, the ALJ limited Plaintiff to "light work" which the relevant Social Security Ruling ("SSR")[7] describes, as relevant here, as implying "that the worker is able to do occasional bending of the stooping type; i.e., for no more than one-third of the workday to bend the body downward and forward by bending the spine at the waist."  SSR 83-14, 1983 WL 31254, at * 4 (1983) (underlining added).  *See Jessica L. v. Comm'r of Soc. Sec.*, 2022 WL 17094149, at * 4 (W.D.N.Y. Nov. 21, 2022) (finding the ALJ's formulation of an RFC for light work and in accordance with SSR 83-14, sufficiently accounted for claimant's bending limitation).  Accordingly, the ALJ, by limiting Plaintiff to light work, also limited Plaintiff to bending for no more than one-third of the workday.  Plaintiff's argument on this point thus is without merit.

In short, in the instant case, Plaintiff has not sustained her burden of establishing that no reasonable factfinder could have reached the same conclusion as the ALJ

---

[7] Social Security Rulings are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.  These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted."  20 C.F.R. § 402.35(b)(1).

based on the evidence of record.  *See Henderson v. Comm'r of Soc. Sec.*, 2019 WL 3237343, at ** 7-8 (W.D.N.Y. July 18, 2019) (sustaining the ALJ's materiality finding where the plaintiff "has not shown that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence of record." (citing *Brault*, 683 F.3d at 448)). The court's thorough scrutiny of the record confirms the ALJ's determination that Plaintiff could perform a limited range of light work is supported by substantial evidence in the record.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 14) is DENIED; Defendant's Motion (Dkt. 15) is GRANTED.  The Clerk of Court is directed to close the file. SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      February 17th, 2023
            Buffalo, New York